**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **SARVAR CHORIEV** | **CIVIL ACTION NO. 1:26-1831** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE DAVID C. JOSEPH** |
| **WARDEN WINN CORRECTIONAL CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Petitioner Sarvar Choriev,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 14]. For reasons below, the Court should deny the petition.

## Background

Petitioner is a citizen of Uzbekistan. He entered the United States of America on December 31, 2023. [doc. # 1, p. 6]. He has no criminal history, he has a "valid Employment Authorization Document," he has worked lawfully, he complied with immigration requirements, he paid taxes, he timely filed for asylum, and he "has maintained positive relationships with the community." *Id.* at 6-7.

Petitioner was taken into immigration custody on June 25, 2025. [doc. # 1, p. 4].

---

[1] Petitioner's "A Number" is 249-370-259.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

On January 14, 2026, an immigration judge ordered Petitioner removed from the United States to Uzbekistan or, in the alternative, to Russia. [doc. #s 1, p. 4; 1-3, pp. 15-16]. On approximately February 13, 2026, Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"); his appeal is pending. *Id.* On June 22, 2026, the BIA received Petitioner's brief.

Petitioner filed this proceeding on approximately June 1, 2026. He claims that he is detained "without a reasonably foreseeable end" in violation of his right to due process. [doc. #s 1, p. 6; 1-1, p. 2].

Respondents opposed the petition on August 3, 2026. [doc. # 14].

**Law and Analysis**

Petitioner claims that the Due Process Clause entitles him to release. In *Dzheison Ford v. Timothy Ducote, et al*., 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States. He was detained for expedited removal. An asylum officer rejected his credible fear claim. Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum. In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause. Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens. Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" 140 S. Ct. at 1977.
>
> In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. Also, like Ford, Kim asked for an

> individualized bond hearing which was not authorized under the statute. Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights. In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.
>
> Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, two aliens were held pending removal after final order of deportation. However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a). The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id*. at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported. *Id*. at 702.
>
> The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is to determine whether Ford's detention is "indefinite" or "potentially permanent."
>
> Ford's detention is not "indefinite" or "potentially permanent." Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. See also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to release. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process.").[3] As in *Ford*, Petitioner's detention is not indefinite or potentially permanent. On January 14, 2026, an immigration judge ordered Petitioner removed. On approximately February 13, 2026, Petitioner appealed the removal order to the BIA; his appeal is pending. On June 22, 2026, the BIA received Petitioner's brief.

Petitioner's appeal will likely extend his detention until the BIA decides his appeal. Petitioner's detention will likely end (i) when his order of removal becomes final (if the BIA

[3] *See also Romero v. Tate*, 2026 WL 1067566, at *1 (S.D. Tex. Apr. 20, 2026); *Bekboev v. Vergara,* 2026 WL 1011244, at *1 (S.D. Miss. Apr. 14, 2026); *Mlaih v. Noem*, 2026 WL 787536, at *4 (N.D. Tex. Mar. 19, 2026).

affirms the order of removal or dismisses Petitioner's appeal) and the Government removes him or (ii) if the BIA rules in Petitioner's favor. Accordingly, the Court should deny Petitioner's claim. Petitioner may of course re-file his claim if his detention becomes indefinite or potentially permanent.

**Recommendation**

For reasons above, **IT IS RECOMMENDED** that Petitioner Sarvar Choriev's petition be **DENIED AND DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 19th day of August, 2026.

Kayla Dye McClusky
United States Magistrate Judge